**FOURTH DIVISION**
**RICKMAN, C. J.,**
**DILLARD, P. J., and PIPKIN, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**May 30, 2023**

# In the Court of Appeals of Georgia

A23A0287. WORTH et al. v. FIRST KEY HOMES, LLC et al.

RICKMAN, Chief Judge.

In this negligence action, appellants Brandon Worth ("Worth") and Michelle Worth (collectively, the "Worths") appeal from the grant of summary judgment in favor of appellees First Key Homes, LLC,[1] First Key Homes of Georgia, LLC,[2] and FKH SFR PropCo B-HLD, L.P.[3] Worth was injured when a dead tree from the appellees' property fell on him while he was installing a privacy fence for customers

---

[1] First Key Homes, LLC, is also identified in the record as FirstKey Homes, LLC.

[2] First Key Homes of Georgia, LLC, is also identified in the record as FirstKey Homes of Georgia, LLC.

[3] The record indicates that FKH SFR PropCo B-HLD, L.P. was formerly known as Cerberus SFR Holdings, L.P.

on an adjacent property. The trial court granted the appellees' motion for summary judgment on the basis that the doctrine of assumption of the risk precluded recovery. Because a genuine issue of material fact exists as to whether Worth understood and appreciated the risk of working on the fence near the dead tree, we reverse.

In reviewing the grant of summary judgment, we view the evidence in the light most favorable to the nonmoving party. See *Thompkins v. Gonzalez-Nunez*, 355 Ga. App. 144, 144 (843 SE2d 39) (2020).

So viewed, the evidence showed that at the time he was injured, Worth worked as a supervisor for a landscaping company. Worth met with the customers before any work began on the fence and was part of the planning and pricing process for the job. The customers initially wanted the fence to be on or just inside of their property line, which would have been within two feet of the trunk of the dead tree. Worth testified in his deposition that he "was there when we recommended that they have the tree removed before any work, major work, be done near that tree because it was obviously dead." After the customers informed him that the tree was not on their property, Worth requested that they ask the owner of the tree to have it removed before he put up the fence. The customers told him that they had asked several times

2

for the tree to be removed, but the neighboring property, which was a rental property, had recently been sold and they did not know who the current owners were.

According to Worth, building the fence on or just inside of the property line "created [an] issue with that tree, because it would've been entirely too close to, obviously, a dead tree." Worth testified that "we got the customers out and told them we couldn't work so closely to [the tree] for reasons of we would have to drill down into their root system, or run the risk of hitting, just hitting up on the tree when we're trying to work." The customers agreed to have the fence installed several feet away from the tree.

Worth was putting pickets on the fence with an airgun when the tree fell. Worth heard a loud noise, saw bark falling, and could feel the tree moving. He ran away, but the tree hit him on the back of his head and upper back, injuring him.

The Worths sued the appellees on grounds of negligence, and the appellees subsequently moved for summary judgment. After a hearing, the trial court granted the appellees' motion for summary judgment, ruling that the doctrine of assumption of the risk barred recovery. This appeal followed.

On appeal, the Worths contend that the trial court erred by granting summary judgment on assumption of the risk grounds because questions of material fact exist as to Worth's actual and subjective knowledge of the relevant danger. We agree.

> Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Furthermore, a de novo standard of review applies to an appeal from a grant or denial of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant. Moreover, at the summary-judgment stage, we do not resolve disputed facts, reconcile the issues, weigh the evidence, or determine its credibility, as those matters must be submitted to a jury for resolution.

(Citations and punctuation omitted.) *Thompkins*, 355 Ga. App. at 145.

"The affirmative defense of assumption of the risk bars recovery when it is established that a plaintiff, without coercion of circumstances, chooses a course of action with full knowledge of its danger and while exercising a free choice as to whether to engage in the act or not." (Citations and punctuation omitted.) *Thompkins*, 355 Ga. App. at 145-146. Under Georgia law, "a defendant asserting an assumption-of-the-risk defense must establish that the plaintiff (1) had actual knowledge of the danger; (2) understood and appreciated the risks associated with such danger; and (3)

4

voluntarily exposed himself to those risks." (Citations and punctuation omitted.) Id. at 146. "Furthermore, knowledge of the risk is the watchword of assumption of risk, and means both actual and subjective knowledge on the plaintiff's part." (Citations and punctuation omitted.) Id. The standard to be applied in assessing an assumption-of-the-risk defense is a subjective one, geared to the particular plaintiff and his situation. Id. at 148. To assume a risk, the plaintiff must have knowledge of "the specific, particular risk of harm associated with the activity or condition that proximately causes injury." (Citations and punctuation omitted.) Id. "As a general rule, whether a party assumed the risk of his injury is an issue for the jury that should not be decided by summary judgment unless the defense is conclusively established by plain, palpable and undisputed evidence." (Citation and punctuation omitted.) *Watson v. Regional First Care*, 335 Ga. App. 740, 741 (782 SE2d 822) (2016).

Here, Worth clearly understood that the dead tree posed a danger if the fence was built within two feet of it. In his deposition, Worth testified that when he first noticed the tree, it was obvious to him that the tree was dead and that the recommendation that the tree be removed was made because the tree was a hazard. Worth acknowledged that he was concerned that the tree would fall and hurt someone. However, it is significantly less clear that he understood and appreciated

5

the risk of working on the fence once the customers agreed to have the fence built farther away from the tree so Worth and his crew would not need to drill post holes into the tree's root system and could avoid hitting the tree while they were working. In his deposition, Worth testified that he did not think that he "was going to walk up to [the tree] and it was going to fall." According to Worth, his "objection[] was doing anything to the tree. . . . So cutting it down or anything like that by us wasn't going to happen." In an affidavit, Worth stated that "[w]hile building the fence[,] care was taken not to touch the tree or damage its roots." Worth also stated that "I have seen trees with a similar appearance which stood for years" and "[a]t no point prior to the tree falling did I observe any feature or movement of the tree, or hear any noises such as cracking or creaking, which would make me think the tree would fall that day." Viewed in the light most favorable to the Worths, the evidence did not establish as a matter of law that Worth understood and appreciated the risk of working on the fence after the customers agreed to have the fence built several feet away from the tree. See *Thompkins*, 355 Ga. App. at 145-146. Because genuine issues of material fact remain as to assumption of the risk, the trial court erred in granting summary judgment on that basis.

*Judgment reversed. Dillard, P. J., and Pipkin, J., concur*.

6